**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

| | |
|---|---|
| **KENNY FRANKLIN EDMONSON** | **PLAINTIFF** |
| **VS.** | **CIVIL ACTION NO. 3:13CV1069-HTW-LRA** |
| **SHERIFF BILLY SOLLIE, ET AL** | **DEFENDANTS** |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

The parties appeared and participated in an omnibus hearing before the undersigned United States Magistrate Judge on July 17, 2014, at the Jackson Federal Courthouse in Jackson, Mississippi. Kenny Edmonson ("Plaintiff" or "Edmonson") appeared *pro se*; Defendants were represented by attorneys Lee Thaggard (Sheriff Billy Sollie and the Lauderdale County Board of Supervisors), Jason Varnado (Nurse Sheila Hanlin), and James K. Dukes, Jr. (Defendants Sheriff Billy McGee, Nurse Johnson, and Forrest County Board of Supervisors).

The hearing was conducted under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and its progeny. It functioned as a scheduling/case management conference, a discovery conference, a *Spears* hearing, and as a pretrial conference. Plaintiff has previously accumulated "three-strikes" under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g).[1] Edmonson was tentatively allowed to go forward in this case *in forma pauperis* because he claimed he was in "imminent danger of serious physical

---

[1] In *Edmonson v. Lee, et al*, 312 F. App'x 663, 664 (Mar. 3, 2009), the Fifth Circuit Court of Appeals stated that because Edmonson now has accumulated at least three strikes, he is barred from proceeding IFP in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious physical injury. *See also Edmonson v. Dale,* No. 3:10cv103, 2011 U.S. Dist. LEXIS 127129 at *9 (N.D. Miss. Nov. 2, 2011); *Edmonson v. McMillin,* No. 3:06cv693 (S.D. Miss. Apr. 11, 2008); *Edmonson v. Ishee,* No. 2:07cv46, 2007 U.S. Dist. LEXIS 94518 at *9 (S.D. Miss. Dec. 18, 2007); *Edmonson v. Howard,* No. 3:07cv158 (S.D. Miss. Dec. 18, 2007); *Edmonson v. Johnson,* No. 6:05fp3491 (W.D. Mo. Feb. 8, 2006); and, *Edmonson v. Marion County,* No. 2:92cv127 (N.D. Miss. Oct. 15, 1993).

injury" due to his glaucoma and cataracts not being medically treated.  *See* Complaint, [1].  Edmonson complains that rather than treating his eye diseases, both Lauderdale and Forrest County officials released him from jail.

The undersigned has considered all the pleadings, Plaintiff Edmonson's sworn testimony, and the applicable law, and concludes that Edmonson has failed to show that he was in imminent danger of serious physical injury at the time he filed his complaint.  His *in forma pauperis* status should be revoked, and this lawsuit should be dismissed without prejudice unless Edmonson pays the filing fee.

Jurisdiction of this case is based upon 42 U.S.C. § 1983.  Edmonson was housed in the Lauderdale County Detention Facility [LCDF] when he filed his Complaint on December 12, 2013.  According to Plaintiff, he had been housed in both the LCDF and the Forrest County Detention Center [FCDC] facilities, and released, on the following dates:

April 2013 (3 weeks in Lauderdale County)

April 2013- October 15, 2013 (free world)

October 15, 2013 - November 6, 2013 (Forrest County)

November 6, 2013 - July 1, 2014 (Lauderdale County)

July 1, 2014 - present (free world)

Plaintiff complained that when he was housed in LCDF in April 2013, he was taken to a Dr. Keith Everette and diagnosed with both cataracts and glaucoma.  Dr. Everette directed Defendant Sollie to get him medication and eye drops and to make an appointment at the University of Mississippi Medical Center [UMC] in Jackson, Mississippi.  Officer Ferrell witnessed the doctor's orders and reported them to Nurse Sheila Hanlin.  Instead of complying with the doctor's orders, Plaintiff was released on his own recognizance.  Plaintiff concedes that he did nothing to obtain treatment from the time he was released in April 2013 until he was jailed again on October 15, 2013.

2

According to Plaintiff, he could not afford treatment during this period. He was not incarcerated at the July 2014 omnibus hearing and testified that he was in the process of securing treatment at UMC at that time; he wanted these Defendants to pay for the treatment.

Plaintiff testified when he was rearrested in October 2013, Nurse Sheila Hanlin interfered with the treatment Dr. Everette prescribed nearly six months before, and Dr. Mutzigger agreed with Nurse Hanlin. They did not allow the treatment originally recommended by Dr. Everette. Plaintiff conceded that Nurse Hanlin did get him into Rush Hospital due to an eye injury. He also received treatment from Dr. Mutzigger, but he disagreed with the medical treatment he received during the period from November 6, 2013, until July 1, 2014.

His testimony reveals that he was treated by medical personnel at each facility at which he was housed– he simply did not agree with the treatments provided and thought Dr. Everette's recommendations from April 2013 (before his release) should have been followed. Accordingly, because Edmonson was provided treatment at the various prisons, even though he was not pleased with the care, the undersigned finds that he was not in "imminent danger of serious physical injury," at the time the lawsuit was filed. Because of this, he cannot proceed further in this lawsuit without first paying the full filing fee.

Title 28 U.S.C. § 1915(g) provides an exception to the "three-strikes provision." In order to meet the exception of 28 U.S.C. § 1915(g), which would allow Edmonson to proceed as a pauper in this action, he must be in "imminent danger of serious physical injury." Addressing the exception provision of § 1915 (g), the United States Court of Appeals for the Fifth Circuit held that:

> [t]he plain language of the statute leads us to conclude that a prisoner with three strikes is entitled to proceed with his action or appeal only if he is in imminent danger at the time that he seeks to file his suit in district court or seeks to proceed with his appeal or files a motion to proceed IFP.

3

*Banos v. O'Guin*, 144 F.3d 883, 884 (5th Cir. 1998). Clearly, the danger must exist at the time the complaint is filed. *Id. See also, Banks v. Langford*, No. 5:10-cv-53, 2010 WL 1711757, at *2 (S.D. Miss. 2010). "Further, [b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002) (citing *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001)).

Edmonson's mere allegations of "imminent danger" do not entitle him to avoid the bar of §1915(g). He has not shown that the treatment provided him by these Defendants from October 15, 2013, until he filed this Complaint some eight weeks later on December 12, 2013, presented an existing and imminent threat of serious physical injury to him for the eight weeks. He acknowledges that he was examined by medical personnel during this period. He does not explain why there was no "imminent danger" to him for the period immediately preceding this incarceration when he was released to the free world for at least six months after the examination by Dr. Everette.

Ironically, Edmonson charges that he should not have been released from custody; that they should have retained him in custody in April, 2013, and again in July, 2014, and treated his eye diseases at the counties' expense. And, that the treatment should have been only that initially prescribed by Dr. Everette. Yet, any release from jail would have been initiated and approved by the district attorney and the court; these Defendants have no authority to actually release prisoners without court approval. Even so, the undersigned finds no law restricting the release of a prisoner (upon bond provisions) due to medical reasons. There is no such private right of action for a prisoner, and the

undersigned is of the opinion that such a release does not violate a prisoner's constitutional rights.[2]

Even if Edmonson was exposed to a serious threat in the past, this is insufficient to meet the imminent danger exception to the statute. *Banos,* 144 F.3d at 884. Because the facts do not suggest that his conditions of confinement during the eight-week period from October 15, 2013, until he filed his Complaint on December 1, 2013, and thereafter until

---

[2]In the Tennessee case of *Walker v. Bradley County Government, et al,* 2014 WL 1493193 at *4, No. E2013-01053 (Tenn.Ct.App. 2014), when considering an early release, the Court held:

> ... However, the issue actually presented here is whether there is a private right of action for improperly being released early from custody before one's sentence has been completed. Our answer to this question is no. Walker has pointed to no authority recognizing any such right of action. Our own research has yielded no authority for such a proposition. We are of the view that Walker did not suffer a legally redressable injury when, and if, he was freed before his sentence was completed.
> Our decision on this issue does not mean non-judicial officials may make their own decisions regarding sentence length. Absent some statutory authority to do so, non-judicial officials may not unilaterally decide to shorten validly court-entered sentences. Also, nothing in our Opinion should be construed to suggest that there is no recourse when a non-judicial official unilaterally releases an inmate early. We hold only that, whatever other recourse is available when a non-judicial official improperly releases an inmate before the inmate's sentence is completed, the prematurely released inmate lacks standing and, therefore, is not the proper party to bring an action to address the improper early release because it is no injury to the inmate simply to be free from jail early.

Additionally, the State of California was ordered to reduce its prison population, and the Supreme Court addressed the issue in *Brown v. Plata,* 131 S.Ct. 1910, 1940 (2011). The Court held that if the State of California "truly believes" that a release order limited to sick and mentally inmates was preferable, it could request modification of the initial order on that basis--- implying that such action was acceptable.

his release, posed an imminent threat of serious physical injury, he does not qualify under the exception.

The Court has reviewed numerous other cases regarding the "imminent danger" exception and is convinced that Edmonson's allegations are insufficient to meet the threshold requirement under § 1915(g). *See Smith v. Blount,* 258 Fed. App'x 630 (5th Cir. 2007) (conclusional allegations insufficient to show inmate was under imminent danger of serious physical injury); *Basey v. Mooneyham*, 172 Fed. App'x 582, 583-84 (5th Cir. 2006) (inmate arguments that his "life endangerment" request was ignored and he was denied a transfer to a different housing facility does not allege "facts showing that he was under threat of serious bodily injury" at the time he filed his notice of appeal); *Edmond v. Texas Dep't of Corrections*, Nos. 97-10819, 11170, 11202, 1998 WL 723877, at *3 (5th Cir. Oct. 7, 1998)(holding that allegations about the quality of medical care, including delay in medical care for fractured jaw, was insufficient to satisfy the §1915(g) exception); *Ortiz v. Quarterman*, No. 2:08-CV-0172, 2008 WL 5024857, at *3 (N.D. Tex. Nov. 21, 2008)(finding that not receiving medication for pain as a result of injuries does not met the exception to 28 U.S.C. § 1915(g)); *Lyles v. Dretke,* No. 6:08cv382, 2009 WL 722076, at *2 (E.D. Tex. Mar. 16, 2009)(citations omitted)(finding that other Courts have held "that general allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to Section 1915(g)"); *Langford, supra*, at *2 (citing various cases which found that there was no showing of imminent danger). *See also Choyce v. Domiguez*, 160 F.3d 1068 (5th Cir.1998) (considering the imminent danger issue when prisoner files motion to appeal *in forma pauperis*).

## Conclusion and Recommendation

For these reasons, it is the opinion of the undersigned that the Order [10] granting Plaintiff *in forma pauperis* status in this cause should be set aside, and his *in forma*

*pauperis* status should be **revoked** pursuant to 28 U.S.C. § 1915(g). His motions for default judgments [29] and [39] should be **denied**.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); Local Rule 72(a)(3).

If no timely objection is made,

IT IS HEREBY ORDERED that Plaintiff is directed to pay the full filing fees in this case on or before **December 5, 2014**. He is warned that his case may be dismissed if he fails to do so.

THIS the 30th day of October, 2014.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE